UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:<br><br>JOHN M. BONA,<br>        Debtor<br><br>NORTH SHORE BANK,<br>A CO-OPERATIVE BANK,<br><br>        Plaintiff<br>v.<br><br>JOHN M. BONA,<br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 7<br>Case No. 17-40426-CJP<br><br><br><br><br><br><br>Adv. Pro. No. 17-04047-CJP |

## **ORDER ON SUMMARY JUDGMENT MOTIONS**

Before the Court are (i) the motion for summary judgment (Doc. No. 45) (the "Summary Judgment Motion"), as supplemented by the memorandum in support (Doc. No. 47) and the further supplement to the memorandum (Doc. No. 61) (collectively, the "Memorandum"), filed by the debtor-defendant and plaintiff-in-counterclaim, John M. Bona (the "Defendant" or "Debtor"), the opposition to the Summary Judgment Motion (Doc. No. 56) (the "Objection") filed by the plaintiff and defendant-in-counterclaim, North Shore Bank, a Co-Operative Bank (the "Plaintiff" or "Bank"), and the Debtor's reply to the Objection (Doc. No. 62) and (ii) the cross-motion for summary judgment (Doc. No. 49) (the "Cross-Motion"), as supplemented by the statement of material undisputed facts (Doc. No. 50) (the "Statement") and memorandum in support (Doc. No. 52) (the "Cross-Motion Memorandum"), filed by the Bank. Pursuant to the Summary Judgment Motion, the Debtor seeks judgment in his favor as to all claims in this action, consisting of the two counts of the complaint (the "Complaint") filed by the Bank and the two counts of the Debtor's amended answer and counterclaim to Complaint (the "Counterclaim"). Through the Cross-Motion,

1

the Bank seeks summary judgment with respect both counts of the Counterclaim. Upon consideration of the filings and the arguments of counsel at the October 29, 2019 hearing (the "Hearing"), and for the reasons stated below, (i) the Cross-Motion is GRANTED and judgment shall enter in favor of the Bank and against the Debtor on the Counterclaim and (ii) the Summary Judgment Motion is DENIED in part and GRANTED in part.[1]

## BACKGROUND

The Debtor was the principal of a professional eye care practice, John M Bona, OD, PC (the "Practice"),[2] which conducted business as Custom Eyecare in Swampscott, Massachusetts. On or about May 28, 2015, the Debtor obtained a business loan on behalf of his Practice from the Bank in the amount of $100,000 (the "Loan"). The application identified the purpose of the Loan was to reimburse the Practice for personal expenses. (Mem. Ex. 3; Obj. App. A, Bona Dep. 46:15–48:3). The Debtor personally guaranteed the Loan.[3]

The Debtor had provided the Bank certain information incorporated into signed and unsigned financial statements in support of the loan application. (Mem. Ex. 5; Obj. App. B, Ex. 2; *Id*. at App. C, Bona Dep. 12:11–13:19; *Id*. at App. D and App. F, Ex. 4; *Id*. at App. E, Bona Dep. 38:12–39:14). The financial statements were inaccurate, and the Debtor did not amend them. (Obj. App. G, Bona Dep. 26:19–29:15). The Debtor did not disclose on the financial statements that he had contingent liabilities as a guarantor under a commercial lease for his Practice and that he had

---

[1] At the outset of the Hearing, the Court indicated its inclination, based on the papers and the record in this case, to rule in favor of the Bank on its Cross-Motion and in favor of the Debtor on his request for summary judgment on Count I of the Complaint. Counsel for the Bank and the Debtor each expressly declined to present oral argument with respect to the Court's preliminary rulings and focused their argument exclusively on Count II of the Complaint.

[2] The Practice filed its own Chapter 7 case on July 10, 2016 under Case No. 16-12621-MSH.

[3] Although a copy of the guaranty has not been submitted by the parties, the Debtor admitted the allegation in the Complaint. Compl. ¶ 8; Countercl. ¶8.

certain unsecured and secured debts, including, among other things, certain credit card debt to Target, Sears, and Belk, a car lease, and a debt to the IRS. (Obj. App. G, Bona Dep. 26:19–28:13; *Id*. at App. H, Bona Dep. 21:7–12). The financial statements only identified certain unsecured debts listed on a handwritten page submitted in connection with the application. (Obj. App. B, Ex. 2; *Id*. at App. D and F, Ex. 4).

The Debtor does not dispute these omissions, but states that he relied on the Bank's representative having actual knowledge of these liabilities, either because the representative had a copy of the Debtor's credit report or the Debtor provided information in addition to the financial statements. Additionally, the Debtor asserts that the Bank representative understood that payments were to be made in connection with a divorce decree that was not final when the Loan was funded. The Debtor contends that he appropriately made disclosures and used the Loan proceeds to pay certain domestic obligations of which the Bank's officers were aware because they understood that the Debtor was attempting to settle his divorce "through" his Practice. (Mem. Ex. 13, E-mail Correspondence from Tina Marie Bohondoney to the Debtor; *Id*. at Ex. 16, Separation Agreement dated June 2, 2015). The loan officer assisting the Debtor with obtaining his Loan, Tina Marie Paulsen, formerly Tina Marie Bohondoney ("Paulsen"), contradicts the Debtor's contentions, testifying at a deposition taken in connection with this litigation that the Bank had relied on the financial statements the Debtor submitted and that the Debtor did not inform the Bank of the commercial lease guaranty, car lease, or changes in the creditors or amounts to be paid with the Loan proceeds, which could have affected whether the Loan would have been approved. (Obj. App. V and W, Paulsen Dep. 41:1–45:19, 47:7–48:6).

The Debtor filed a voluntary Chapter 7 petition on March 11, 2017. On May 24, 2017, the Chapter 7 Trustee held the Section 341 meeting of creditors (the "341 Meeting") at which the Debtor testified under oath.

3

Pursuant to the Complaint, the Bank seeks a determination that the debt allegedly owed to it by the Debtor for outstanding Loan amounts is nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and (15)[4] ("Count I") and § 523(a)(2) ("Count II"). In Count I, the Bank contends that the Debtor impermissibly used the business Loan for non-commercial purposes, namely to satisfy support payments to his former spouse pursuant to a separation agreement or to pay other personal living expenses. The Bank argues that use of the Loan proceeds for this purpose constitutes a property support and settlement incurred pursuant to a divorce proceeding. In Count II, the Bank states that the Debtor misrepresented the status of his unsecured debts and engaged in "other conduct" in order to qualify for a loan with the intent to deceive the Bank.

The Debtor's Counterclaim consists of two counts: defamation (the "Defamation Claim") and vicarious liability (the "Vicarious Liability Claim"), stemming from certain statements made by counsel to the Bank ("Counsel") at the Debtor's 341 Meeting. The Debtor contends that Counsel defamed him at the 341 Meeting by accusing the Debtor, in the presence of an unknown number of unrelated individuals, of committing fraud during the process of applying for a loan from the Bank, although the Debtor could not recall the exact words used by Counsel. (Countercl. ¶¶ 46–49; Statement App. C, Bona Dep. 105:20–22). The Debtor believes Counsel's statements about fraud made in a public manner amounted to an attack on his character that put him in a "bad light." (Countercl. ¶ 49). The Debtor also contends that the Bank should be determined vicariously liable for Counsel's purported tort.

## **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 56, which is made applicable to adversary proceedings by Fed. R. Bankr. P. 7056, a "court shall grant summary judgment if the movant shows that there is no

---

[4] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

4

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also* Fed. R. Bankr. P. 7056; *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir. 1994) (explaining "[i]t is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law"). "A genuine issue is one supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party. Material facts are those having the potential to affect the outcome of the suit under the applicable law." *Sampson Lumber Co., Inc. v. Tucci (In re Tucci)*, 462 B.R. 278, 282 (Bankr. D. Mass. 2011) (internal citations and quotations omitted). "As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver an absence of evidence to support the nonmoving party's case." *In re Varrasso*, 37 F.3d at 763 n.1 (citation and internal quotations omitted). "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material." *Id*. (citations and internal quotations omitted).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). As the Supreme Court noted, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. Where there are cross-motions for summary judgment on certain claims, courts "employ the same standard of review, but view each motion separately, drawing all inferences in favor of the nonmoving party." *Fadili v. Deutsche Bank Nat'l Trust Co.*, 772 F.3d 951, 953 (1st Cir. 2014) (citation omitted).

5

## **THE BANK'S CROSS-MOTION**

Although the parties did not submit a transcript of the 341 Meeting in support of either of their respective motions, the Debtor acknowledges that the alleged defamatory statements made by Counsel consisted of questions at the 341 Meeting alleging that the Debtor deliberately withheld or omitted financial data to secure the Loan by fraudulent means. (Statement App. C, Bona Dep. 112:6–16, 113:1–10). The Debtor also recognizes that the Bank subsequently filed the Complaint containing a § 523(a)(2) nondischargeability claim supported by similar allegations of fraudulent misrepresentations. (Countercl. ¶ 48). The Debtor, nonetheless, posits that the embarrassment of being questioned about committing fraud during the loan procurement process at the 341 Meeting in the presence of a number of people, who were not personally known to the Debtor, constitutes defamatory conduct by Counsel.

Taking every reasonable inference in the Debtor's favor, the Defamation Claim fails as a matter of law because Counsel's statements at the 341 Meeting are subject to a litigation privilege that protects statements made "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 102 (D. Mass. 2006) (quotations omitted). The statements of Counsel directly relate to allegations of fraud that are being pursued in this adversary proceeding and the subject matter of the 341 Meeting questioning was relevant to the Bank's claim in the Chapter 7 case and potentially relevant to administration of the estate.

Under Massachusetts law, "statements by a party, counsel or witness in the institution of . . . a judicial proceeding are absolutely privileged provided such statements relate to the proceeding." *Davidson v. Cao*, 211 F. Supp. 2d 264, 275 (D. Mass. 2002) (quotations omitted); *see also Sullivan v. Birmingham*, 416 N.E.2d 528, 530 (Mass. App. Ct. 1981) (concluding that the privilege "is available only when the challenged remarks are relevant or pertinent to the judicial proceedings").

6

The privilege "rests on the policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." *Id*. "The privilege may not be exploited as an opportunity to defame with impunity and unnecessary or unreasonable publication to parties outside the litigation can result in the loss of the litigation privilege." *Taylor*, 445 F. Supp. 2d at 102.

Statements made at a § 341 meeting of creditors can serve as communications related to litigation. *See, e.g., In re Cedar Funding, Inc.*, 419 B.R. 807, 818–19 (B.A.P. 9th Cir. 2009) (determining that a Chapter 11 trustee's alleged defamatory "statements to the creditor-investor body at the § 341(a) meeting pertain[ing] to his duties of protecting the business as a going concern and protecting the assets of [the debtor] to maximize their value for the benefit of creditors" were protected by litigation privilege and quasi-judicial immunity); *In re Quality Botanical Ingredients, Inc.*, 249 B.R. 619, 627 (Bankr. D.N.J. 2000) (finding, under New Jersey law, that a meeting of creditors to elect a trustee in a bankruptcy case is part of a judicial proceeding, and that creditor statements made at such a meeting are, therefore, privileged). The statements alleged to have been made by Counsel in this case are subject to litigation privilege. This serves as an absolute bar to the Defamation Claim against Counsel because they were made in the context of an examination under oath in connection with the Debtor's pending Chapter 7 case and in contemplation of filing a complaint seeking nondischargeability on the basis of fraud under § 523(a)(2). The statements were within the subject matter of reasonable inquiry at the 341 Meeting and in anticipation of the § 523(a)(2) litigation subsequently commenced by the Bank.  As such, the statements cannot be the basis of an actionable defamation claim, even if there were unknown, unrelated parties present during the examination of the Debtor. By extension, the Vicarious Liability Claim, pursuant to which the Debtor seeks to impute the purported defamatory statements of Counsel to the Bank, similarly must fail because there is no actionable underlying defamation claim.

## THE DEBTOR'S SUMMARY JUDGMENT MOTION

The Debtor seeks summary judgment with respect to all claims and counterclaims in this matter.

### a. Summary Judgment Denied as to the Debtor on Count II and the Counterclaim

With respect to the Debtor's request for judgment on the Counterclaim, such request is denied for the same reasons discussed above. Additionally, the Court finds that summary judgment is not appropriate regarding Count II of the Complaint because material facts relating to the claim remain in dispute.[5] Although the Complaint contains no specific reference to the subsection of § 523(a)(2) under which the Bank is moving, the Bank references both § 523(a)(2)(A) and (B) in its Objection.[6]

To determine whether a debt is not dischargeable pursuant to § 523(a)(2)(A), the Court of Appeals for the First Circuit has described the test as follows:

> A [debtor] will be liable if (1) he makes a false representation, (2) he does so with fraudulent intent, i.e., with "scienter," (3) he intends to induce the plaintiff to rely on the misrepresentation, and (4) the misrepresentation does induce reliance, (5) which is justifiable, and (6) which causes damage (pecuniary loss).

*Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997). To establish a debt is nondischargeable

---

[5] Procedural deficiencies with respect to the Summary Judgment Motion, as supplemented by the Memorandum, provide an alternative basis for denying summary judgment as to Count II of the Complaint, as the motion does not include "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation" in contravention of Local Rule 56.1 of the United States District Court for the District of Massachusetts, as made applicable to this proceeding under Massachusetts Local Bankruptcy Rule 7056–1. Additionally, the Debtor does not specifically address each element of the § 523(a)(2) claims at issue.

[6] Section 523(a)(2)(A) excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). While § 523(a)(2)(A) specifically excludes misrepresentations regarding a debtor's financial condition, § "523(a)(2)(B) provides separately for such misrepresentations." *Palmacci v. Umpierrez*, 121 F.3d 781, 789 (1st Cir. 1997). Because Congress enacted the two subsections to address distinct factual situations, they are "mutually exclusive." *Douglas v. Kosinski (In re Kosinski)*, 424 B.R. 599, 608 (B.A.P. 1st Cir. 2010) (citations omitted).

under § 523(a)(2)(B), a plaintiff must prove:

> (1) the debtor made a statement in writing; (2) the statement concerned the debtor's or an insider's financial condition; (3) the statement was materially false; (4) the creditor actually and reasonably relied on this false statement; and (5) the debtor made the false statement with the intent to deceive the creditor.

*In re Kosinski*, 424 B.R. at 608. The burden of proof rests with the plaintiff, who must prove each requirement by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Palmacci*, 121 F.3d at 787. To succeed his Summary Judgment Motion, however, the Debtor must demonstrate that, for each requirement, no genuine issue of material fact remains and the Plaintiff cannot prove the requirement by a preponderance of the evidence. *Palmacci*, 121 F.3d at 787–88.

The Debtor's request for summary judgment as to Count II fails as there are material facts in dispute with respect to each of the elements of the claims that have been addressed by the Debtor in the Summary Judgment Motion, including whether the purpose of the Loan was to "reimburse [the] business for personal expense[s]," whether the Debtor adequately disclosed his liabilities, and whether the Debtor misled the Bank as to the intended use of the Loan proceeds. Mem. Ex. 3. These facts are material to whether the Debtor actually made a false representation, acted with the requisite intent, and whether there was reasonable or justifiable reliance[7] by the Bank.

The Debtor concedes that each of § 523(a)(2)(A) and (B) has an intent element. While the Debtor disputes that he acted with the requisite intent, the Bank identifies this as a material dispute not appropriate for determination by summary judgment. Under § 523(a)(2)(A), "[b]ecause the intent to defraud is rarely proven by direct evidence, courts assess this element using a totality of the circumstances approach to discern the debtor's subjective intent. [A] debtor's fraudulent intent can be inferred if the totality of the circumstances presents a picture of deceptive conduct by the

---

[7] As to a creditor's reliance under § 523(a)(2)(A), the Supreme Court of the United States has held that "§ 523(a)(2)(A) requires only justifiable reliance—a lower standard than reasonableness." *Field v. Mans*, 516 U.S. 59, 70 (1995). Unlike § 523(a)(2)(A), § 523(a)(2)(B) explicitly only requires reliance to be reasonable.

debtor." *Whitcomb v. Smith*, 572 B.R. 1, 16 (B.A.P. 1st Cir. 2017) (internal quotations and citations omitted). The same is true under § 523(a)(2)(B). *See, e.g., Morgan Keegan & Co., Inc. v. Swan (In re Swan)*, 499 B.R. 118, 126 (Bankr. D. Mass. 2013). "'Generally, summary judgment is inappropriate in cases where intent is an element of a claim, such as § 523(a)(2)(A)... [since] [i]ntent is a subjective state of mind and cannot be easily assessed from a record on summary judgment.'" *In re Santiago*, 563 B.R. 457, 468 (Bankr. D.P.R. 2017) (quoting *JJ Best Banc & Co. v. Snyder (In re Snyder)*, 2014 WL 5595764, at *3 (Bankr. N.D. W. Va. Oct. 31, 2014)). Such state of mind issues should only be resolved at the summary judgment stage where the "circumstantial evidence [is] sufficiently potent to establish fraudulent intent beyond hope of contradiction." *In re Varrasso*, 37 F.3d at 764. Because the Debtor's contentions regarding intent and reliance require the Court to draw inferences against the Bank, the non–moving party, that "are not mandated by the record[,]" summary judgment is inappropriate regarding Count II. *Id.* at 763.

Additionally, given that summary judgment is rarely appropriate on the issue of intent, the Debtor appears to focus his argument on the element of reasonable or justifiable reliance as it relates to (i) information provided to the Bank from which the Bank could have ascertained that disclosures made by the Debtor were not accurate either when made or because of subsequent events and (ii) the circumstances of the underwriting of the loan as a favor by the Bank's former President. The Debtor asks the Court to conclude, without the benefit of a trial, that the Bank would have made the loan regardless of disclosures made by the Debtor. There are material factual disputes regarding the impact of the Debtor's omissions on whether the Loan would have been approved if certain omissions had been known to the Bank and whether the Debtor used the Loan proceeds to satisfy debts other those he had represented would be paid with the proceeds. (Obj. App. V and App. W, Paulsen Dep. 42:7–45:3, 47:7–48:6). While the Debtor asserts that the Bank's representatives understood his intentions related to use of the Loan proceeds and that financial

10

information was disclosed to the Bank prior to closing concerning his divorce obligations that had not yet been finalized, in the deposition testimony of the loan officer who interacted with the Debtor on the loan transaction, the loan officer contested these assertions and the impact of the omissions on whether the Loan would have been approved if the facts had been known at the time the Loan was funded.  (Obj. App. V and App. W, Paulsen Dep. 42:7–45:3, 47:7–48:6). Specifically, the loan officer testified that it would have been material to the Bank if certain obligations relating to a business lease had been disclosed or if the Bank was aware that the loan proceeds would not be used for the purposes identified by the Debtor. (Obj. App. V and App. W, Paulsen Dep. 42:20–45:3, 47:24–48:6).

Since the Bank has "produce[d] specific facts, in suitable evidentiary form, to . . . establish the presence of a trial worthy issue" regarding the financial disclosures that were made by the Debtor and the context of those disclosures, summary judgment with respect to Count II must be denied. *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (internal quotations and citation omitted). It is disputed whether certain inaccurate disclosures were "corrected" through subsequent information provided to the Bank, and genuine factual issues remain as to whether subsequent disclosures were made in sufficient detail and identifiable context to alert the Bank to the fact that the application and related financial statements were not complete. On this record, the Court cannot conclude that there is no genuine dispute as to any material fact and that the Debtor is entitled to judgment as a matter of law. The Court must make findings regarding these disputed facts after assessing the credibility of witnesses and the evidence presented at trial.

b. **Summary Judgment Granted as to the Debtor on Count I**

With respect to Count I of the Complaint, judgment shall enter in favor of the Debtor because, as a matter of law, the Bank does not have standing to bring such claims. Section 523(a)(5)

excepts from discharge any debt "for a domestic support obligation," which is defined in § 101(14A) in relevant part as a "debt . . . (A) owed to or recoverable by (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental unit . . . ." 11 U.S.C. § 101(14A). Section 523(a)(15) excepts from discharge any debt "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) [i.e., a domestic support obligation] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . . ." 11 U.S.C. § 523(a)(15).

The Bank is a non-spouse creditor of the Debtor attempting to except from discharge a debt resulting from a Loan, the proceeds of which the Debtor used to pay what would have been non-dischargeable debts to his former spouse stemming from a separation agreement. In examining whether summary judgment would be appropriate under § 523(a)(5), the Court must determine whether the Loan proceeds are a debt (1) incurred in the course of a divorce and (2) owed or recoverable by (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative or (ii) a governmental unit. *See* 11 U.S.C. §§ 101(14A), 523(a)(5). Facially, the debt at issue does not and could not be deemed non-dischargeable under § 523(a)(5).[8] The use of loan proceeds to pay domestic support obligations does not automatically convert a dischargeable debt to a nondischargeable debt under § 523(a)(5). If individuals and entities not included in the definition of "domestic support obligations" could except their debts from discharge, such an interpretation would render the exception provided under § 523(a)(5) meaningless,

---

[8] The cases cited by the Bank in support of its § 523(a)(5) claim, *In re Soforenko*, 203 B.R. 853 (Bankr. D. Mass. 1997) and *Samayoa v. Jodoin (In re Jodoin)*, 196 B.R. 845 (Bankr. E.D. Cal. 1996), *aff'd*, 209 B.R. 132 (B.A.P. 9th Cir. 1997), cite to an earlier version of § 523(a)(5) that has since been amended and, in any event, the cases involved former spouses seeking to determine the dischargeability of debts, which is not analogous to the factual scenario in this case, involving the Bank as a third-party claimant.

swallowing the general rule under § 727 that debts are generally dischargeable, except as specifically provided under § 523(a).

In addition, neither the language of § 523(a)(15) nor the legislative history of that statutory provision provides for an objection to be lodged by the Bank as a non-spouse creditor.[9] Therefore, as a matter of law, the Bank does not possess the requisite standing to pursue the subject action under § 523(a)(15).

## **CONCLUSION**

The Court hereby enters judgment in favor of the Bank as to both counts of the Counterclaim and in favor of the Debtor with respect to Count I of the Complaint. The request by the Debtor for summary judgment with respect to Count II is denied. In accordance with the case management order, the parties shall file their joint pretrial memorandum with respect to the surviving Count II of the Complaint within fourteen (14) days of the date of this Order.

By the Court,

Dated: November 6, 2019

Christopher J. Panos
United States Bankruptcy Judge

---

[9] In the Objection, the Bank acknowledges "the Bank is certainly not a spouse, former spouse or child of the Debtor," but argues "there is no language in §523(a)(15) that disqualifies the Bank as a creditor seeking to prevent a discharge under that provision," citing *Zimmerman v. Soderlund (In re Soderlund)*, 197 B.R. 742 (Bankr. D. Mass 1996). Obj. 16. However, the version of § 523(a)(15) that was examined by the court in the *Soderlund* case has been significantly amended and the version presently in place does not leave a similar opening to find standing for a non-spouse creditor. *See* 11 U.S.C. § 523(a)(15).

13